# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ERICA RAMIREZ, on behalf of herself and all other persons similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Civil Action No.:<br>) 1:21-cv-00762-AT |
| v. | )<br>) |
| SNAPMEDTECH, INC. dba SNAPNURSE, INC., | )<br>)<br>) |
| Defendant. | )<br>) |

**DEFENDANT'S STATEMENT OF MATERIAL UNDISPUTED FACTS**

Pursuant to Local Rule 56.1(B), Defendant SnapMedTech, Inc. d/b/a SnapNurse ("SnapNurse" or "Defendant") submits the following statement of material undisputed facts to which there is no genuine issues to be tried:

**I.  About SnapNurse**

1. SnapNurse is a healthcare staffing agency that connects healthcare facilities in need of nurses with travel nurses in search of work. (Complaint, Dkt. 1, ¶ 3; Deposition of Kim Grant ("Grant Dep."), attached hereto as **Exhibit 1**, 13: 6 – 11.)

2. Although the travel nursing industry is not new, it has expanded in recent years due to the onset of the Covid-19 global pandemic. (Grant Dep. 13: 23 – 14: 4.)

3. In order to recruit nurses, SnapNurse runs social media advertisements or campaigns. (Grant Dep. 14: 6 – 13.)

4. Once SnapNurse recruits a nurse for a particular assignment, the nurse must complete the onboarding process to become credentialed to work with and be employed by SnapNurse. (Grant Dep. 31: 24 – 32: 6.)

5. As part of the onboarding process, a nurse must provide various documents, including but not limited to a negative drug screen, a negative Covid test, a skills checklist, background check, an I-9 form, and licensing information. (Grant Dep. 32: 25 – 33: 4; 36: 5-10.)

6. Some of this information may be provided in advance; however, there is certain information that must be submitted at the job site. (Grant Dep. 33: 5-11.)

7. While some nurses may be local, other nurses travel across states to accept an assignment at a designated healthcare facility. (Grant Dep. 16: 1-3.)

II. **The August 2020 State of Florida Assignment**

8. In August 2020, SnapNurse contracted with the State of Florida to provide nurses to Fort Lauderdale healthcare facilities to conduct Covid testing. (Grant Dep. 22: 11 – 19; 25: 21 – 26: 4; 50: 20 - 23.)

9. SnapNurse recruited nurses for the assignment in Florida. (Grant Dep. 26: 15-19.)

10. Plaintiff Erica Ramirez ("Ms. Ramirez" or "Plaintiff") and Opt-In Plaintiffs Michael Lackowski, Teresa Burns, Deirdre Dunn, Ameera Brewer, Kristin Hill, Mia Francis, Cassandra Lacey, and Tessie Sampson (collectively, "Plaintiffs") learned about the assignment in Florida and pursued the opportunity to work with SnapNurse. (Deposition of Erica Ramirez ("Ramirez Dep."), attached as **Exhibit 2**, 44: 21-24.)

### A. The SnapNurse Covid Mission Information Sheet

11. SnapNurse provided some of the Plaintiffs with a SnapNurse Covid Mission Information Sheet ("MIS"). (Complaint, Ex. A; Ramirez Dep. 71: 4-5.)

12. Plaintiffs' breach of contract claim is based upon the MIS. (Complaint, ¶ 65; Ramirez Dep. 82: 11 – 18.)

13. The MIS contained information regarding the assignment, including the anticipated start dates of 8/22-8/24/2020 and anticipated end dates of 9/4-9/6/2020. (Complaint, Ex. A, p. 1.)

14. The MIS provided the following information regarding guaranteed hours and compensation:

> To receive the 48-hour guarantee, you are required to be available and eligible to work all assigned hours. Guaranteed Hours are paid at the regular rate of pay with OT rates if needed. Guaranteed hours will be from the start of the assignment on 8/23/2020, not upon arrival at the hotel.

(Complaint, Ex. A, p. 1.)

15. The MIS provided that in-processing for the assignment would "be held between 8/19/2020 and 8/23/2020 between 7 am and 7 pm." (Complaint, Ex. A, p. 1.)

16. The MIS provided that "[a]ll tax forms need to be completed no later than in processing at the hotel with SnapNurse." (Complaint, Ex. A, p. 2.)

17. The MIS provided nurses with the option to either fly or drive to the job site and stated that SnapNurse would cover certain travel costs as follows:

> Airfare:  Roundtrip airfare is provided.  Flight information is sent via email.
> Driving:  You will be reimbursed mileage at the IRS standard rate, up to $300 each way or $600 total.
> Meals:  Meals during this assignment are not reimbursed.
> Baggage Fees:  We will reimburse one checked bag up to 50 lbs.

(Complaint, Ex. A, p.2.)

18. Regarding shift information, the MIS provided as follows:

> You shift is assigned on-site. There is no Guarantee of Shift time. This is an emergency staffing project. All applicants must be flexible by committing to working at least 12 hours per day and floating to units in which you are qualified to work.

(Complaint, Ex. A. p. 4.)

19. The MIS required applicants to take and pass a drug screen:

> You must pass a 10 panel drug screen for controlled substances before working. If you take any prescribed medications where you believe you may test positive on a 10-panel drug test, you must notify a recruiter and arrange your own drug screen and review before you travel. If you do not pass the drug screen, you may not work and will be responsible for your travel costs. You may not work if you test positive onsite.

(Complaint, Ex. A. p. 4.)

### B. Plaintiffs Reported to the Ft. Lauderdale Embassy Suites

20. SnapNurse told nurses interested in the assignment to report to the Embassy Suites in Ft. Lauderdale, Florida. (Grant Dep. 51: 15-20.)

21. Although almost every Plaintiff had prior experience working as travel nurses for other agencies, most had never worked for SnapNurse prior to applying for the assignment in Fort Lauderdale. (Ramirez Dep. 31: 20-22; 44: 18-20; Deposition of Michael Lackowski ("Lackowski Dep."), attached hereto as **Exhibit 3**, 28: 4-6; Deposition of Mia Francis ("Francis Dep."), attached hereto as **Exhibit 4**, 23: 24 – 24: 1; Deposition of Teresa Burns ("Burns Dep."), attached

hereto as **Exhibit 5**, 22: 24 – 23:5; Deposition of Kristin Hill ("Hill Dep."), attached hereto as **Exhibit 6**, 38: 8-10.)

22. Plaintiffs understood that they had the choice to either accept or decline to pursue the opportunity in Fort Lauderdale. (Deposition of Ameera Brewer ("Brewer Dep."), attached hereto as **Exhibit 7**, 40: 6-16; Lackowski Dep. 28: 10-15.)

23. Plaintiffs understood that they had the choice to either fly or drive to the worksite. (Hill Dep. 49: 7-10; Lackowski Dep. 32: 5-10.)

24. Some Plaintiffs chose to fly to the worksite (Hill Dep. 48: 22-23), while other Plaintiffs chose to drive (Lackowski Dep. 32: 11-13.)

25. SnapNurse either paid or reimbursed nurses for their travel costs to and from Fort Lauderdale. (Francis Dep. 51: 24 – 52: 2: Deposition of Deirdre Dunn ("Dunn Dep."), attached as **Exhibit 8**, 38: 8-12; Lackowski Dep. 55: 14-23.)

26. At the Embassy Suites, the nurses took part in a "job fair" in which they were asked to finish the credentialing process so as "to become eligible for employment for th[e] assignment." (Grant Dep. 50: 24 – 51: 1-6.)

27. Some nurses did not complete the requisite credentialing tasks prior to the assignment's anticipated start date, such as passing a drug screen:

> Q: And so this would suggest that SnapNurse did not receive your test result until August 29; correct?
> A: Correct.
> …
> Q: [T]heir documents that you signed say that you are not eligible to work until you have passed the drug test, correct?
> A: Correct.

(Ramirez Dep. 85: 25 – 86: 3; 87: 7-10.)

> Q: Would you agree that you never actually submitted to or completed a drug screen?
> A: I submitted to . . . I mean, I – I was there to take one.
> Q: Did you ever complete one?
> A: I was not able to.

(Hill Dep. 66: 22 – 67: 4.)

28. SnapNurse did not put any restrictions on what the nurses could do while they were waiting on an assignment:

> Q: Did [SnapNurse] place any other limitations on what you could do or could not do during that time period while you were supposedly on standby?
> A: No.

(Brewer Dep. 58: 11-14.)

> Q: And when you were done, you didn't have an assignment right away, right?
> A: No.
> Q: What – what did you do next?
> A: After we left that – I went to that meeting and listened to what the lady was talking about. And then, she told us, you know, just go and venture out. You're free to go – you know, just go and venture out. . . .

7

(Francis Dep. 46: 3 – 10.)

    29.    While waiting for an assignment, Plaintiffs had the opportunity to use their time to pursue personal activities of their choice:

> Q: And then, what did you guys do – what did you do next?
> A: We went to the grocery store, bought some groceries, and then we came back to the hotel. Well, we came back to the hotel, changed clothes, and then we went out to eat at a nearby restaurant we could walk to.

(Francis Dep. 43: 7-12.)

> Q: What – what did you do next?
> A: . . . So myself and Mia [Johnson], we took the car and we went to Florida – another part of Florida. I have a relative that lives there. And we went to see her.
> . . .
> Q: And what part of Florida does your relative live in?
> A: She lives in Key West.
> . . .
> Q: And then, what did you do then?
> A: We didn't do anything. We just all – you know, like, the three girls that I know, I went to – I think to Cindy's room and we sat around and talked. And that was it.

(Francis Dep. 46: 10 – 47: 9.)

> Q: So that was Sunday the 23rd, and then what happened the morning of Monday, August 24th?
> A: Monday, we still didn't have any assignments. . . . So Mia Johnson and Carina and myself, we went to Miami. We hung out in Miami, did a little boat cruise, you know, ride, just basically relaxing for the day. And we stayed out there a couple of hours.
> . . .
> Q: Okay. So that's Monday, the 24th. Did you guys do anything else other than go on the boat cruise?

8

> A: Just – no. Just walked around whatever that site was right there where the boat took place. There were, like eateries there and shops. And we went shopping and bought some souvenirs. That was it.

(Francis Dep. 47: 17 – 48: 11.)

> Q: What did you do at the hotel?
> A: Stayed in my room, watched TV.

(Burns Dep. 38: 9-10.)

> Q: Did you ever leave the hotel to get something to eat, for personal errand, or anything like that?
> A: Yes.
> Q: What did you leave the hotel to do?
> A: To go get groceries and to – I drove one time to get groceries, and I walked one time to get dinner in a nearby plaza, like something walking distance.

(Hill Dep. 57: 5-13.)

> Q: Did you leave the hotel at any other point between day one and day three, for example, to go to a restaurant, run an errand, go to the beach?
> A: Yes.
> Q: What did you – what did you do?
> A: I went and had dinner.
> Q: Was that on day one, day two, day three, all of those?
> A: It was probably every single day.

(Lackowski Dep. 62: 18 – 63: 1.)

> Q: What did you do while you were at the hotel?
> A: Slept, ate, and waited. I used the pool. And that's pretty much all I can remember. Maybe I talked with some other nurses. Yeah, I mean, I did. So I don't remember –
> Q: Did you watch TV?
> A: Yeah, watched some TV.

9

(Lackowski Dep. 63: 11 – 18.)

30.     One of the biggest incentives of travel nursing is being able to travel and treat the assignment as a "vacation" by visiting family members or being able to leave a colder state for a warmer one.  (Grant Dep. 45: 24 – 46: 4.)

31.     Indeed, one of the reasons Plaintiffs chose travel nursing is that it provides the opportunity to experience new places.  (Hill Dep. 33: 9-11; Brewer Dep. 20: 3-5.)

### C. SnapNurse Did Not Provide Plaintiffs with an Assignment

32.     On August 25, 2020, SnapNurse sent a text message to Plaintiffs, stating as follows:

> SnapNurse has filled all the mission positions for the State of Florida. If you have not received a mission, then you must check out of the hotel today or tomorrow.  New missions will be issued to SnapNurse to start on 9/5.  Reply YES if you want to be placed on the priority list for 9/5 start or NO if you want to be removed.

(Ramirez Dep. Ex. 9, p. 11.)

33.     SnapNurse did not provide Plaintiffs with work at the Fort Lauderdale site.  (Complaint, ¶ 33.; Burns Dep. 36: 10-13.)

34.     SnapNurse paid hotel costs for travel nurses while they stayed in Fort Lauderdale waiting for an assignment.   (Deposition of Tessie Sampson ("Sampson Dep."), attached hereto as **Exhibit 9**, 67: 11-13.)

35. SnapNurse either paid or reimbursed nurses for their travel costs to and from Fort Lauderdale. (Francis Dep. 51: 24 – 52: 2: Dunn Dep. 38: 8-12; Lackowski Dep. 55: 14-23.)

36. Nurses did not expect compensation for the time they spent traveling to and from the Fort Lauderdale site:

> Q: Are you seeking compensation for the actual time that it took for you to drive?
> A: No, no.

(Deposition of Stacy Ann Head ("Head Dep."), attached hereto as **Exhibit 10**, 10: 15-17.)

Respectfully submitted this 29th day of December, 2021.

*s/Matthew R. Simpson*
Matthew R. Simpson
Georgia Bar No. 540260
msimpson@fisherphillips.com
JonVieve D. Hill
Georgia Bar No. 907946
jhill@fisherphillips.com
FISHER & PHILLIPS LLP
1075 Peachtree Street NE, Suite 3500
Atlanta, GA 30309
Telephone: (404) 240-4221
Facsimile: (404) 240-4249

Amanda S. Thompson
Georgia Bar No. 622854
amanda@stlaborlaw.com
SALTER THOMPSON LAW PC
2860 Piedmont Road, NE, Suite 215
Atlanta, Georgia 30305
Telephone: (404) 247-0107

Facsimile:  (404) 920-4342

*Counsel for Defendant*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ERICA RAMIREZ, on behalf of herself and all other persons similarly situated, ) ) ) ) | |
| ) Plaintiff, ) v. ) ) SNAPMEDTECH, INC. dba ) SNAPNURSE, INC., ) ) Defendant. ) | CIVIL ACTION FILE NO. 1:21-cv-00762-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December 2021, I electronically filed **DEFENDANT'S STATEMENT OF MATERIAL UNDIPSUTED FACTS** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Daniel C. Levin, Esq.
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
dlevin@lfsblaw.com

Daniel Aaron Rihn, Esq.
Robert Pierce & Associates
707 Grant Street, Suite 125
Pittsburgh, PA 15219
arihn@peircelaw.com

Gary Franklin Easom, Esq.
The Easom Firm
125 Magnolia Hammock Dr.
Ponte Vedra Beach, FL 32082
easom76@gmail.com

                                      *s/Matthew R. Simpson*
                                      Matthew R. Simpson
                                      Georgia Bar No. 540260
                                      FISHER PHILLIPS LLP