UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERICA RAMIREZ, on behalf of herself and all other persons similarly situated, )<br>)<br>)<br>Plaintiff, )<br>v. )<br>)<br>SNAPMEDTECH, INC. dba )<br>SNAPNURSE, INC., )<br>)<br>Defendant. ) | Civil Action No.:<br>1:21-cv-00762-AT |

**<u>DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS<br>MOTION FOR SUMMARY JUDGMENT</u>**

Defendant SnapMedTech, Inc. d/b/a SnapNurse ("SnapNurse" or "Defendant") submits this Reply Brief in Support of Its Motion for Summary Judgment, stating as follows:

## I. INTRODUCTION

Plaintiff Erica Ramirez's Complaint alleges that she "was not provided work as guaranteed by her contract" - the SnapNurse Covid Mission Information Sheet ("MIS") - and that she "was not provided reimbursement for her travel and lodging to and from Ft. Lauderdale, Florida or pay for travel to and from Ft. Lauderdale, Florida." [Doc. 1, ¶¶ 33-34, 65, Ex. A.]  At summary judgment, Ms. Ramirez changed her allegations and stated for the first time that her breach of contract claim is based on an entirely separate document that she has had in her possession since before filing the Complaint: the Confirmation of Assignment ("COA"). [Doc. 66, p. 4.] Ms. Ramirez also gave up on the travel time claims set forth in her Complaint, conceding that "Plaintiff and proposed class are not seeking compensation for traveling to and from their job," and instead asserted new claims for "wages under the FLSA for hours not paid during training and orientation." [Doc. 68, p. 9 n. 5.]

Ms. Ramirez is correct to abandon her Complaint allegations.  As she now concedes, the MIS is not an enforceable contract, and commute time to a job site for potential employment is not compensable under the FLSA.  However, the revised allegations in her Response to Defendant's Motion for Summary Judgment are not properly before the Court and, even if they were, are subject to dismissal.

The COA on which Ms. Ramirez presently relies is an offer of at-will employment "contingent upon the successful completion of SnapNurse on-boarding

that includes . . . drug screening requirements" and potentially allows for guaranteed hours "if you start on a Sunday or Monday." [Doc. 66, Ex. 5, p. 2.] Not only were its terms, including the supposed "guaranteed hours," subject to change, Ms. Ramirez concedes that she did not pass her drug screen until a week after the assignment's anticipated start date and that she never performed any work for SnapNurse. Ms. Ramirez did not satisfy SnapNurse's hiring criteria and therefore was not eligible for guaranteed hours as of the date SnapNurse cancelled the assignment due to lack of work on or about August 25, 2020. Ms. Ramirez's claims, and those of the class she purports to represent, are subject to summary judgment.

## II. LEGAL AUTHORITY

### A. Plaintiff Cannot Allege New Claims at Summary Judgment.

Plaintiff's Complaint sets forth a cause of action for breach of "contracts with Defendant where it guaranteed its contract to provide Plaintiff and the class at least 48 hours of work so long as Plaintiff and members of the class made themselves available for work. See contract attached hereto as 'Exhibit A.'" [Doc. 1, ¶ 65.] The document that Plaintiff chose to attach as Exhibit A to her Complaint was the MIS; she did not reference the COA anywhere in the Complaint. [Doc. 1, Ex. A.]

The issue is not, therefore, "[w]hether a contract need be attached to a complaint," as Plaintiff now suggests. [Doc. 72, pp. 3-4.] Rather, the question is whether Plaintiff may assert a claim for breach of one alleged contract which she chose to attach to the Complaint, and then later assert a claim for breach of an

entirely different "contract" at the summary judgment stage. As courts in this district have made clear, she cannot.

In *Knieper v. Forest Group USA, Inc.*, the plaintiff realized that the agreement on which his claims were initially based did not contain the provisions he alleged were breached, and therefore argued new claims of breach of contract at summary judgment; the court rejected the plaintiff's revised allegations, holding that "a plaintiff may not amend its complaint through argument in a brief opposing summary judgment." Case No. 1:04-cv-1969-CC, 2006 WL 8431473, * 5 (N.D. Ga. Mar. 30, 2006) (quoting *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Similarly, in *Griffin v. Bank of America Corp.*, the court rejected arguments raised for the first time in opposition to summary judgment that the defendant "created new contracts with Plaintiffs, which he breached with the intent to defraud Plaintiffs." Case No. 1:09-cv-1144-WSD, 2010 WL 11598055, *8 (N.D. Ga. Sept. 17, 2010).

Indeed, the Eleventh Circuit has explicitly rejected the plaintiff's attempt to raise a new breach of contract claim at the summary judgment stage:

> Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint. ***The proper procedure for [plaintiff] to assert a new contract claim was to seek to amend her complaint.***

*Gilmour*, 382. F.3d at 1315 (emphasis added). *See also GeorgiaCarry.Org, Inc. v. Georgia*, 678 F.3d 1244, 1258 n. 27 (11th Cir. 2012), *cert. denied,* ⎯⎯ U.S. ⎯⎯, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013) ("It is well-settled in this circuit that a

plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings."); *see also Flintlock Const. Services, LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221 (11th Cir. 2013) (refusing to consider additional facts alleged at summary judgment, which were asserted to eliminate a critical deficiency in the allegations of their amended complaint).

Plaintiff has known of the existence of the COA since the onset of this case; she even produced the document in response to written discovery requests. [*See* Doc. 66, Ex. 5.] Still, she chose to base her Complaint on the MIS and referred to the MIS when asked to identify the document on which she was suing at deposition.

> Q. So Ms. Ramirez, this is a document you produced to us titled SnapNurse COVID Mission Information Sheet. It's also attached to your complaint. Is this the contract that you contend is at issue in this case?
>
> A. Yes.
>
> \*\*\*
>
> Q. And then if we can go – let's go back to the COVID Mission Information Sheet. So this is the document, correct me if I'm wrong, that you contend in this lawsuit sets forth the terms that SnapNurse breached; correct?
>
> A. Yes.

(Ramirez Dep., pp. 70:5-10, 82:11-18; *see also*, Ramirez Dep., p. 97:5-16.)

Plaintiff's breach of contract claim, as stated in the Complaint and affirmed at deposition, is premised on the MIS. Plaintiff cannot raise a new claim on an entirely separate document at summary judgment. Because Plaintiff never amended the Complaint to include a new breach of contract claim based on the COA, the Court should not consider it. *Felix v. Key Largo Management Corp.*, Case No. 4:19-cv-

10067, 2021 WL 5037570, at *4 (S.D. Fla. Oct. 29, 2021). For the reasons set forth in Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment, Plaintiff's breach of contract claim premised upon the MIS should be dismissed. [*See* Doc. 51-1, pp. 21-23.]

### B. Plaintiff's Claim for Breach of Contract Under the COA Fails.

#### 1. Florida Law Governs the Enforceability of the Contract.

Georgia courts generally adhere to the rule of *lex loci contractus* to evaluate the enforceability of a contract in the absence of a choice-of-law provision. *U.S. Security Associates, Inc. v. Lumby*, Case No. 1:18-cv-5331-TWT, 2019 WL 8277263, * 7 (N.D. Ga. Sept. 25, 2019). The rule of *lex loci contractus* mandates that, where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply. *Id.* Indeed, a contract is made "in the place where the last act essential to the completion of the contract was done." *Shorewood Packaging Corp. v. Commercial Union Ins. Co.*, 865 F.Supp. 1577 (N.D. Ga. 1994). Because the potential assignment was to be performed in Florida, it is the state where the last act essential to completion of the alleged agreement was to occur, and its law applies.

#### 2. Plaintiff's Breach of Contract Claim Fails Irrespective of the Choice of Law.

##### a. The COA Is an Offer of "At-Will" Employment.

It does not, however, matter whether Florida or Georgia law applies; Plaintiff's breach of contract claim fails under both. Assuming Plaintiff may allege claims for breach of the Confirmation of Assignment ("COA") (she cannot), the COA by its own terms is merely an offer of at-will employment. It states:

> We are pleased to make the following ***offer*** to you for the position of xxx with SnapNurse. Details of the offer are as follows:
>
> Conditions: Your employment with the company is on an "at-will" basis, which means that both the company and you are free to terminate the employment relationship at will, without any cause or notice. ***As an "at-will" employee, your job duties, title, compensation, benefits, and the personnel policies and procedures to which you are subject may change at any time.*** Neither this letter, nor any communications between you and the company, creates any contract of employment of any nature between you and the company. The "at-will nature of your employment may only be changed in an express written agreement signed by you and the company's Chief Operating Officer.

[Doc. 66, Ex. 5, p. 2] (emphasis added.)

Under both Florida and Georgia law, "Absent a controlling agreement providing specific terms of employment, 'the general rule [is] that employment relationships supported by no consideration other than the performance of duties and the payment of wages are terminable at will by either the employer or the employees. *Rowan v. Dubber, Inc.*, Case No. 1:19-cv-1276-SDG, 2020 WL 5815923, *4 (N.D. Ga. Aug. 28, 2020) (quoting *Balmer v. Elan Corp.*, 278 Ga. 227, 228 (2004)); *Liff v. City of Cocoa*, 745 So. 2d 441, 441 (Fla. Dist. Ct. App. 1999). "In addition to termination at will by either party, 'an employer may also alter the terms of an employee's employment without the employee's consent.'" *Rowan*, 2020 WL 5815923, *4 (quoting *Lynch v. Valcom Driver Leasing, Inc.*, 2007 WL 9702866, *2 (N.D. Ga. 2007)).

The COA does not provide definite start dates, end dates, or shift times. While it (unlike the MIS) notes "Yes" besides "Guaranteed Hours," it does not state how many hours are guaranteed, for how long, or at what rate. *See Rowan*, 2020 WL

5815923, *7 (offer letter containing no formula or method for calculating compensation is unenforceable). And, importantly, it states that the "***job duties, title, compensation, benefits, and the personnel policies and procedures to which you are subject may change at any time***." [Doc. 66, Ex. 5] (emphasis added.) Accordingly, by the express terms of the supposed contract under which Plaintiff now brings suit, SnapNurse could "terminate [Plaintiff] or alter the terms of [her] employment without [her] consent." *Rowan*, 2020 WL 5815923, *4. The COA does not give rise to a viable claim for breach of contract.

### b. Plaintiff Did Not Satisfy Conditions Precedent for Guaranteed Hours.

The COA also makes clear that it is contingent upon a number of pre-conditions, including "the successful completion of SnapNurse on-boarding that includes providing legal proof of your identity, meeting background check and drug screening requirements, license verification, and the successful completion of certification specific skills checklist and competency exams." [Doc. 66, Ex. 5, p. 2.] In addition to being subject to change due to the at-will nature of the parties' prospective employment relationship, the COA's "Guaranteed Hours" provision is further contingent upon a number of factors, most notably the completion of the onboarding process and the beginning of the working relationship. The COA states, "Guaranteed hours are only honored your first week ***if you start on a Sunday or Monday***." [Doc. 66, Ex. 5, p. 2] (emphasis added.)

Plaintiff did not, however, start on a Sunday or Monday; indeed, she did not start at all. The Complaint admits, "Plaintiff arrived at her worksite on [Friday]

August 21, 2020 for orientation; however, **was not provided work** as guaranteed by her contract." [Doc. 1, ¶ 33] (emphasis added.)  Plaintiff is not entitled to guaranteed hours under the COA because she did not perform any work for SnapNurse.  To the extent she alleges that her arrival at orientation entitles her to guaranteed hours, she arrived on a Friday, not a Sunday or Monday as contemplated by the COA.

Plaintiff also did not complete her onboarding requirements, another pre-requisite to receiving a work assignment and potentially guaranteed hours.  The COA states that it is contingent upon "the successful completion of SnapNurse on-boarding that includes . . . meeting background check and drug screening requirements."  [Doc. 66, Ex. 5, p. 2.]  Ms. Ramirez did not, however, obtain a negative drug screen prior to the anticipated start date of the assignment.

> Q: And so this would suggest that SnapNurse did not receive your test result until August 29; correct?
> A: Correct.
> …
> Q: [T]heir documents that you signed say that you are not eligible to work until you have passed the drug test, correct?
> A: Correct.

(Ramirez Dep. 85: 25 – 86: 3; 87: 7-10.)[1]

Because Ms. Ramirez did not (1) start work, or (2) meet drug screening requirements prior to the anticipated assignment start date, she is not entitled to guaranteed hours under the COA.  *See Rowan*, 2020 WL 5815923, *5 ("The Offer Letter is unambiguous; it expressly stated that [plaintiff] would receive severance pay only if one-of-two specific preconditions occurred.  Neither did.  As such, the

---

[1] Similarly, Opt-In Plaintiff Kristin Hill never took a drug screen for SnapNurse. (Hill Dep. 66: 22 – 67: 4.)

severance provision was not triggered"); *Faircloth v. A.L. Williams & Assocs., Inc.*, 219 Ga. App. 560, 561 (1995) ("The contract specifies . . . that retirement can happen only after the SVP has either performed his duties for three years or reached the age of sixty-two. As neither of these preconditions to retirement occurred before plaintiff stopped working for defendant, the trial court did not err [in entering summary judgment].").

### C. Plaintiff Did Not Perform Compensable Work Under the FLSA.

Plaintiff's FLSA claim fails for similar reasons. Specifically, Plaintiff acknowledges that she "***was not provided work*** as guaranteed by her contract." [Doc. 1, ¶ 33] (emphasis added.) Because Plaintiff did not perform any work, she is not entitled to compensation for "hours worked" under the FLSA.

#### 1. Plaintiff Has Abandoned Claims for Travel and Wait Time.

Although Plaintiff initially alleged that "Defendant failed to pay . . . providers for their travel time which entails being paid below minimum wage for hours worked in overtime in violation of the FLSA" [Doc. 1, ¶ 60], she has for good reason abandoned those claims. [*See* Doc. 66, p. 9 n. 5] ("Plaintiff and proposed class are not seeking compensation for traveling to and from their job . . ."). Under the Portal to Portal Act, travel time to and from a potential job site is not compensable. *See Vega v. Gasper*, 36 F.3d 417, 422 (5th Cir. 1994), *abrogated on other grounds, Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 228 (5th Cir. 2017); *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340 (11th Cir. 2007); *Kroll v. Home Depot U.S.A., Inc.*, Case No. 2003 WL 23332905 (S.D. Ga. Aug. 20, 2003).

Likewise, Plaintiff apparently concedes that she is not entitled to "wait time." [*See* Doc. 66, p. 9 n. 5.] This is also for good reason: Plaintiff was free to use any time spent waiting for a potential SnapNurse assignment as she saw fit, and therefore was not entitled to compensation for such time under the FLSA. *See, Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 807 (11th Cir.1992) (holding detectives' on-call duties did not severely restrict use of their free time where detectives who did not purchase their own beepers could not participate in outdoor activities such as fishing or hunting, leave town, or go on vacation while on call); *Bright v. Houston Northwest Med. Ctr.,* 934 F.2d 671 (5th Cir.1991) (holding biomedical equipment repair technician's on-call duties did not significantly restrict use of free time where technician was called in to work an average of five times per week and was required to report to the hospital within twenty minutes of being paged); *Rutlin v. Prime Succession, Inc.,* 220 F.3d 737, 744 (6th Cir.2000) (holding funeral embalmer's on-call duties did not significantly restrict use of free time where embalmer alleged his on-call duties prevented him from drinking alcohol, visiting his children, or boating, and that his meals, evening activities and sleep were disrupted by his on-call duties).

### 2. SnapNurse Is Not Liable for Training and/or Orientation Time Under the FLSA.

n her Response to Defendant's Motion for Summary Judgment, Plaintiff alleges that she is "seeking wages under the FLSA for hours not paid during training and orientation." [Doc. 66, p. 9 n. 5.] Again, these allegations are not included anywhere in the Complaint; rather, Plaintiff raises them for the first time in her response brief. [*See generally*, Doc. 1.] Regardless, they are without merit.

SnapNurse did not employ Plaintiff during any purported period of training and/or orientation. Rather, SnapNurse provided Plaintiff with an offer letter in the form of a COA which was expressly contingent upon "the successful completion of SnapNurse on-boarding that includes providing legal proof of your identity, meeting background check and drug screening requirements, license verification, and the successful completion of certification specific skills checklist and competency exams." [Doc. 66, Ex. 5, p. 2.] And, the FLSA does not consider time spent completing pre-employment paperwork as "hours worked." *Dellinger v. Science Applications Intern. Corp.*, 649 F.3d 226, 229 (4th Cir. 2011) ("We have been unable to find any case that extends FLSA protections to applicants or prospective employees."); *Nance v. May Trucking Co.*, 685 Fed.Appx. 602, 604-5 (9th Cir. 2017) (truck drivers attending defendant's mandatory three-day orientation program as a step in the application process for securing employment with defendant are not entitled to compensation under FLSA"); *Bienkowski v. Northeastern University*, 285 F.3d 138, 141 (1st Cir. 2002) ("employers who furnished training to *potential* employees were not required under the FLSA to compensate trainees for time spent in the training program"); *Saini v. Motion Recruitment Partners, LLC*, Case No. SACV 16-01534 JVS (KESx), 2017 WL 1536276, * 5 (C.D. Ca. Mar. 6, 2017) (interview time not compensable under FLSA).

Still, Plaintiff specifically seeks compensation for pre-employment tasks such as "finalizing the requisite paperwork to practice, completing testing, and being fitting for masks." [Doc. 66, p. 12.] Plaintiff provides no further detail regarding her pre-employment "work" other than a conclusory allegation by Opt-In Plaintiff

Stacy Ann Head that she "did orientation. I did COVID testing. I did fit testing. I did donning and duffing, drug testing." [Doc. 66, p. 6.] Plaintiff fails, however, to describe what precise work she performed during orientation, fit testing, and donning and "duffing."[2] Moreover, courts have routinely held that "finalizing the requisite paperwork to practice" and submitting to pre-employment drug screens is not compensable under the FLSA. *See Nance*, 685 Fed.Appx. at 604-5 (plaintiffs not entitled to compensation under the FLSA where "[d]uring the second and third days, applicants complete tax and administrative paperwork in a classroom setting").

The FLSA does not apply to pre-employment activities, such as completing administrative paperwork and submitting to background and drug screenings. And Plaintiff has not identified with specificity any other activity that she allegedly performed during training and/or orientation for which she was not compensated. Plaintiff's FLSA claims are subject to summary judgment.

### III.   CONCLUSION

Plaintiff filed a lawsuit that lacks a viable claim. After realizing that the MIS is not an enforceable contract and that the Portal-to-Portal Act does not provide compensation for time spent traveling to a job site, she abandoned her Complaint allegations.

---

[2] At the summary judgment stage, Plaintiff's bare allegation that she was required to doff and don during orientation must be disregarded absent additional detail. Moreover, given her Complaint admission that she "was not provided work as guaranteed by her contract," it is impossible to imagine *what* equipment Plaintiff may have been required to doff or don, the purpose for doffing or donning, and the amount of time it took to purportedly doff or don such equipment. [Doc. 1, ¶ 33]

Yet, Plaintiff's revised theory of relief also lacks merit. Plaintiff "was not provided work" by SnapNurse. She is therefore not entitled to guaranteed pay under the COA, nor is she entitled to compensation for hours worked under the FLSA. Plaintiff's claims, and those of the class she purports to represent, should be dismissed on summary judgment.

Respectfully submitted this 14th day of March 2022.

*s/Matthew R. Simpson*
Matthew R. Simpson
Georgia Bar No. 540260
msimpson@fisherphillips.com
JonVieve D. Hill
Georgia Bar No. 907946
jhill@fisherphillips.com
FISHER & PHILLIPS LLP
1075 Peachtree Street NE, Suite 3500
Atlanta, GA 30309
Telephone: (404) 240-4221
Facsimile: (404) 240-4249

Amanda S. Thompson
Georgia Bar No. 622854
amanda@stlaborlaw.com
SALTER THOMPSON LAW PC
2860 Piedmont Road, NE, Suite 215
Atlanta, Georgia 30305
Telephone: (404) 247-0107
Facsimile: (404) 920-4342

*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ERICA RAMIREZ, on behalf of herself and all other persons similarly situated, ) ) ) ) ) | |
| Plaintiff, ) | Civil Action No.: 1:21-cv-00762-AT |
| v. ) ) | |
| SNAPMEDTECH, INC. dba SNAPNURSE, INC., ) ) ) | |
| Defendant. ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), I certify that Defendant's Reply Brief in Support of its Motion for Summary Judgment has been prepared using Times New Roman 14-point font in compliance with L.R. 5.1.

*s/Matthew R. Simpson*
Matthew R. Simpson
Georgia Bar No. 540260
FISHER PHILLIPS LLP

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ERICA RAMIREZ, on behalf of herself and all other persons similarly situated,<br><br>　　　　Plaintiff,<br>v.<br><br>SNAPMEDTECH, INC. dba SNAPNURSE, INC.,<br><br>　　　　Defendant. | Civil Action No.:<br>1:21-cv-00762-AT |

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March 2022, I electronically filed **DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

Daniel C. Levin, Esq.
Levin Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
dlevin@lfsblaw.com

Gary Franklin Easom, Esq.
The Easom Firm
125 Magnolia Hammock Dr.
Ponte Vedra Beach, FL 32082
easom76@gmail.com

Daniel Aaron Rihn, Esq.
Robert Pierce & Associates
707 Grant Street, Suite 125
Pittsburgh, PA 15219
arihn@peircelaw.com

　　　　　　　　　　_s/Matthew R. Simpson_
　　　　　　　　　　Matthew R. Simpson
　　　　　　　　　　Georgia Bar No. 540260
　　　　　　　　　　FISHER PHILLIPS LLP